**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| LUIS SANCHEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-14-924-W |
| | ) | |
| KENT KING et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Luis Sanchez, a state prisoner appearing pro se, has filed suit under 42 U.S.C. § 1983, alleging that two prison healthcare officials violated his Eighth Amendment right to proper medical care. *See* Compl. (Doc. No. 1) at 1-3, 7-8.[1] United States District Judge Lee R. West has referred this matter to the undersigned Magistrate Judge for proceedings under 28 U.S.C. § 636. The matter is currently before the Court on Plaintiff's request to amend his Complaint by dismissing Kent King as a Defendant to this action (Doc. No. 33) and on Defendant Shirley Stouffer's Motion for Summary Judgment (Doc. No. 34).

STANDARDS OF REVIEW

A.      *Plaintiff's Motion to Amend*

The Federal Rules of Civil Procedure allow a plaintiff to amend his or her complaint once as a matter of course within 21 days after serving it, or within 21 days after the earlier of service of a responsive pleading or of certain Rule 12 motions. *See*

---

[1] Citations to documents filed in this Court use the page numbers assigned by the Court's electronic filing system.

Fed. R. Civ. P. 15(a)(1). In all other cases, the plaintiff may amend the complaint before trial "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend before trial should be denied only where good reason exists, such as when amendment would be futile, cause undue delay, or unduly prejudice the opposing party. *Ali v. Dinwiddie*, 291 F. App'x 164, 166-67 (10th Cir. 2008) (citing *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

B.     *Defendant Stouffer's Motion for Summary Judgment*

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are material when they "might affect the outcome of the suit under the governing law," and a "genuine dispute" exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When considering a motion for summary judgment, the Court generally views the evidence and any reasonable inferences drawn from the record in the light most favorable to the nonmoving party. *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts. . . . When opposing

parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). And while the Court construes a pro se litigant's pleadings liberally, such a litigant nevertheless is held to the same rules of procedure as are binding on other parties. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

A party that moves for summary judgment has the initial burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient admissible evidence to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is at least one genuinely disputed question of material fact that must be resolved by the jury. *See* Fed. R. Civ. P. 56(c), (e); *Harris*, 550 U.S. at 380; *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Parties can establish the existence or nonexistence of a disputed material fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or
- "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B).

A defendant seeking summary judgment on the basis of an affirmative defense must show that the undisputed material facts establish all of the elements of the defense.

*See Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997) ("The defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted."). If the defendant meets this burden, the burden shifts to the plaintiff to cite evidentiary material that shows there is a genuine factual dispute as to at least one element of the affirmative defense, absent which summary judgment must be granted in favor of the defendant. *Id.*

## BACKGROUND

Plaintiff is an inmate at Lawton Correctional Facility ("LCF") in Lawton, Oklahoma. Compl. at 1-2. LCF is a private prison owned and operated by GEO Group, Inc. ("GEO") pursuant to a contract with the Oklahoma Department of Corrections ("ODOC"). Def.'s Mot. Summ. J. (Doc. No. 34) at 1; Special Report ("S.R.") (Doc. No. 24) at 1. In August 2014, Plaintiff filed a one-count Complaint alleging that Kent King, MD, and Health Services Administrator Shirley Stouffer violated Plaintiff's constitutional right to medical care for his ulcerative colitis. *See* Compl. at 2-3, 7. Defendant Stouffer is employed "by Correct Care Solutions[,] which provides medical services at LCF under contract with GEO." Def.'s Mot. Summ. J. at 2.

Plaintiff was diagnosed with ulcerative colitis and secondary sepsis in late September-early October 2013, after being treated at non-LCF hospitals due to severe abdominal pain and chronic hematochezia. *See* S.R. Exs. 6-9 (Doc. Nos. 24-6 to 24-9); Pl.'s Resp. Ex. 5 (Doc. No. 35-6). Upon Plaintiff's being discharged back to LCF on October 7, 2013, Defendant King prescribed: 500 mg Cipro twice daily for ten days; 500 mg Flagyl twice daily for ten days; 800 mg Asacol three times daily for twelve weeks; 40

mg Prednisone once daily, titrated by 10 mg every two weeks; and 4 grams Cholestyramine in water daily. S.R. Ex. 8, at 1. An LCF doctor ordered medications for Plaintiff upon his return to the prison on October 7, 2013. S.R. Ex. 9, at 1.

On January 29, 2014, Plaintiff was seen for a medical appointment at LCF for complaints of abdominal pain, constipation, and diarrhea. *See* S.R. Ex. 10 (Doc. No. 24-10) at 1. Plaintiff was prescribed Bisacodyl once daily for ten days and psyllium once daily for seven days, and he was instructed to drink more water. *See id.* On February 4, 2013, Plaintiff was transported to the emergency department at a local hospital due to severe abdominal pain, nausea, vomiting, and blood in his stool. S.R. Ex. 11 (Doc. No. 24-11) at 1. Plaintiff was discharged the next day with instructions to drink more water and to eat a "higher fiber diet" at LCF. S.R. Ex. 12 (Doc. No. 24-12) at 1-2. The discharging physician also opined that Plaintiff "may benefit from Boost-type meal supplements." *Id.* at 2. On February 6, 2014, an LCF certified nurse practitioner noted that Plaintiff was receiving Delzicol and had been placed on seven days of prednisone and that the facility's physician "will check with administrative about any diet issues." S.R. Ex. 14 (Doc. No. 24-14) at 1. Four days later, a nurse reported that Plaintiff had "declared a hunger strike," insisting that he would "not eat [until] he gets the special diet outlined at the hospital." S.R. Ex. 15 (Doc. No. 24-15) at 1; S.R. Ex. 16 (Doc. No. 24-16) at 1; *see also* S.R. Ex. 27 (Doc. No. 24-27) at 2-3. Plaintiff resumed eating his regular meals by February 17, 2014. *See* S.R. Ex. 17 (Doc. No. 24-17) at 1.

Plaintiff continued to experience ulcerative colitis symptoms throughout spring and summer 2014. *See, e.g.*, Pl.'s Resp. Ex. 5, at 7-8, 10, 12-14 (Requests for Health

Services); S.R. Exs. 19, 20 (Doc. Nos. 24-19, -20) (LCF treatment records); S.R. Ex. 21 (Doc. No. 24-21) (emergency department report). On Friday, August 1, 2014, Plaintiff was transported to a local hospital with abdominal pain and blood in his stool. *See* S.R. Ex. 21, at 1-2. Plaintiff reported experiencing "intermittent abdominal discomfort for the last few years," as well as "some occasional loose stools with occasional blood streaking in the stools" since mid-July 2014. *Id.* at 1. The attending physician prescribed a Medrol Dosepak and instructed Plaintiff to follow up with a Dr. Fawaz on the following Monday. *Id.* at 2.

Plaintiff filed suit in this Court on August 29, 2014. In his Complaint, Plaintiff alleges that Dr. King and Health Services Administrator Stouffer violated Plaintiff's Eighth Amendment right to "proper medical care" because they delayed the provision of "specified and needed" treatment, including unidentified medications, and refused to "follow the recommendations of an outside doctor." Compl. at 2, 7. Liberally construed, Plaintiff challenges (1) Defendants' acts or omissions in September 2013 that delayed the diagnosis of Plaintiff's ulcerative colitis, and (2) Defendants' subsequent failure to provide Plaintiff with medications and a special diet for his ulcerative colitis. *See id.*; Pl.'s Resp. Ex. 2A (Doc. No. 35-2) at 1-4; Pl.'s Resp. Ex. 2B (Doc. No. 35-3) at 1-3; Pl.'s Resp. Ex. 3 (Doc. No. 35-4) at 1-3; Pl.'s Resp. Ex. 4 (Doc. No. 35-5) at 2, 3; S.R. Ex. 26 (Doc. No. 24-26) at 1-3, 9-10; S.R. Ex. 27 (Doc. No. 24-27) at 1-3. Plaintiff seeks $200,000 in compensatory and punitive damages against each Defendant in his or her individual capacity. Compl. at 5, 8.

On January 5, 2015, the Court ordered Plaintiff to cause a copy of his Complaint to be served upon each named Defendant no later than May 5, 2015. *See* Order Requiring Serv. & Special R. (Doc. No. 13) at 1. As of May 18, 2015, however, Plaintiff still had not served Defendant King, and there was no indication in the Court's record that Defendant King was aware of this lawsuit.[2] *See* Order to Show Cause (Doc. No. 28) at 2. After Plaintiff submitted a response to the Order to Show Cause, *see* Doc. No. 29, the Court extended Plaintiff's service deadline to July 17, 2015. *See* Order (Doc. No. 30) at 1-2. The Court further instructed Plaintiff that, unless service was waived or accomplished by that date, Plaintiff was required to show good cause in writing by July 24, 2015, as to why this action should not be dismissed without prejudice as to Defendant King. *Id.* at 3 (citing Fed. R. Civ. P. 4(d)(4), (l), (m)). On July 21, 2015, the Court received Plaintiff's request "that he be permitted to amend/or dismiss Kent King as one of the defendants and be permitted to proceed with his suit against Defendant Stouffer."[3] *See* Pl.'s Mot. (Doc. No. 33) at 1.

---

[2] On February 12, 2015, the United States Marshals Service ("USMS") filed a Process Receipt and Return form ("USM-285") certifying that a USMS Deputy Marshal who attempted service on Plaintiff's behalf was unable to locate Defendant King based upon the information Plaintiff had provided. *See* USM-285 (Doc. No. 18) at 1.

[3] Although Plaintiff styled his filing as an "Objection to [the] Court Dismissing Motion for Lack of Service on Defendant King," the substance of Plaintiff's request makes clear that Plaintiff wants to dismiss Defendant King as a defendant to this action *because* Plaintiff was unable to serve Defendant King, or obtain a waiver of service, by the Court's extended deadline. *See* Pl.'s Mot. at 1 (citing Fed. R. Civ. P. 15(a)).

> Federal courts sometimes will ignore the legal label that a pro se litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category. They may do so in order to avoid an unnecessary dismissal, to avoid inappropriately stringent application of formal labeling

Defendant Stouffer has filed a motion for summary judgment on the ground that Plaintiff did not, prior to commencing this lawsuit, exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), as well as on the merits of Plaintiff's Eighth Amendment claims. *See* Def.'s Mot. Summ. J. at 1-10. In assessing Defendant Stouffer's Motion for Summary Judgment, the undersigned has treated the factual allegations of Plaintiff's verified Complaint and other sworn filings (*see* Doc. Nos. 1, 35, 35-1 to 35-7), and those of the sworn Special Report (Doc. Nos. 24, 24-1 to 24-27) as affidavit evidence for summary judgment purposes, to the extent that facts are alleged therein based on personal knowledge. *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991); Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

I.      *Whether Plaintiff's Claims Against Defendant King Should Be Dismissed*

Plaintiff has requested "that he be permitted to amend/or dismiss Kent King as one of the defendants and be permitted to proceed with his suit against Defendant Stouffer." Pl.'s Mot. at 1. As detailed above, Plaintiff's Complaint has not been served on

---

requirements, or to create a better correspondence between the substance of a *pro se* motion's claim and its underlying legal basis.

*Castro v. United States*, 540 U.S. 375, 381-82 (2003) (citations omitted). Accordingly, the undersigned construes Plaintiff's request as a motion to amend his Complaint under Rule 15(a) of the Federal Rules of Civil Procedure. *See Carskadon v. Diva Int'l, Inc.*, No. 12-cv-1886, 2013 WL 1876784, at *2 (D. Colo. May 3, 2013) ("[A] Plaintiff who wishes to dismiss some claims, but not others, should do so by amending the complaint pursuant to Rule 15."); *see also Gobbo Farms & Orchards v. Poole Chem. Co.*, 81 F.3d 122, 123 (10th Cir. 1996) ("[Plaintiff] offers no authority, and we have found none, to support its contention that Rule 41(a) applies to dismissal of less than all claims in an action.").

Defendant King, and Defendant King has not filed any responsive pleading or Rule 12 motion. Rule 15 allows a plaintiff to amend his or her complaint once as a matter of course within 21 days after serving it, or within the earlier of 21 days after service of a responsive pleading or of certain Rule 12 motions. *See* Fed. R. Civ. P. 15(a)(1). Thus, Plaintiff's request for leave to amend his Complaint and dismiss Defendant King as a named defendant is not necessary, as Rule 15 allows him to do so by right. *Cf. Midcities Metro. Dist. No. 1 v. U.S. Bank N.A.*, 44 F. Supp. 3d 1062, 1065 (D. Colo. 2014) ("[A] plaintiff may amend its complaint after *the defendant* has answered only with leave of court." (emphasis added) (citing Fed. R. Civ. P. 15(a)(2)).

Moreover, Plaintiff's time to serve Defendant King has expired, and Plaintiff has not provided good cause to warrant further extending that time. As applicable during the time period at issue, Rule 4(m) provided that "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—*must* dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m) (emphasis added) (Rule subsequently amended). And Plaintiff has not argued that a permissive extension of time is warranted; to the contrary, he has informed the Court in no uncertain terms that he does not want additional time to serve Defendant King. *See* Pl.'s Mot. at 1; *Espinoza v. United States*, 52 F.3d 838, 842 & n.8 (10th Cir. 1995).

Accordingly, the undersigned recommends that the Court grant Plaintiff's motion to dismiss his claims against Defendant King without prejudice to refiling. *See, e.g.,*

*Shupe v. Corr. Corp. of Am.*, CIV-08-224-HE, 2008 WL 4681581, at *1 (W.D. Okla. Oct. 21, 2008) (granting plaintiff's motion to dismiss claims against unserved defendants).

II.     *Whether Defendant Stouffer Is Entitled to Summary Judgment on Plaintiff's Eighth Amendment Claim*

Defendant Stouffer seeks summary judgment in her favor on the ground that Plaintiff did not, prior to commencing this lawsuit, exhaust his available administrative remedies as required by the PLRA.  *See* Def.'s Mot. Summ. J. at 2-5; S.R. at 4-5; S.R. Exs. 24, 25 (Doc. Nos. 24-24, -25), 26, 27.

A.  *The PLRA*

The PLRA provides that no action under 42 U.S.C. § 1983 may be brought by a prisoner regarding his or her conditions of confinement "until such administrative remedies as are available are exhausted."  *See* 42 U.S.C. § 1997e(a).  The requirement that an inmate exhaust available administrative remedies before coming to federal court applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  A remedy is "available" when there is "the possibility of some relief for the action complained of," even if it is not the kind of relief that the prisoner ultimately seeks.  *Booth v. Churner*, 532 U.S. 731, 738 (2001).

The PLRA requires "proper exhaustion" of available remedies so as to give prison officials the time and opportunity to address an inmate's complaints internally before being haled into federal court.  *See Jones v. Bock*, 549 U.S. 199, 204 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90, 93-103 (2006).  Proper exhaustion in turn "demands compliance

with an agency's deadlines and other critical procedural rules." *Ngo*, 548 U.S. at 90.

Thus, "[a]n inmate who begins the grievance process but does not complete it is barred

from pursuing a § 1983 claim under the PLRA for failure to exhaust his administrative

remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("[T]he doctrine

of substantial compliance does not apply."). "Where prison officials prevent, thwart, or

hinder a prisoner's efforts to avail himself of an administrative remedy," however, "they

render that remedy 'unavailable' and a court will excuse the prisoner's failure to

exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010).

Exhaustion is an affirmative defense that the defendant must establish by showing

that the prisoner-plaintiff did not follow all of the required steps in an available

administrative review process. *Jones*, 549 U.S. at 216; *Tuckel v. Grover*, 660 F.3d 1249,

1254 (10th Cir. 2011); *see also Little*, 607 F.3d at 1249 ("Because the prison's procedural

requirements define the steps necessary for exhaustion, an inmate may only exhaust by

properly following all of the steps laid out in the prison system's grievance procedure."

(citation omitted) (citing *Jones*, 549 U.S. at 218; *Ngo*, 548 U.S. at 90)). But if the

defendant makes that showing, "the onus falls on the plaintiff to show that remedies were

unavailable to him as a result of intimidation" or other impermissible interference by

prison officials. *See Tuckel*, 660 F.3d at 1254; *Little*, 607 F.3d at 1250; *Brewer v. Mullin*,

130 F. App'x 264, 266 (10th Cir. 2005).

### B. The Oklahoma Department of Corrections Grievance Process

The Oklahoma Department of Corrections has a multistep process through which a

prisoner in its custody may seek administrative relief or answers to complaints about

most issues related to prison life. *See generally* Offender Grievance Process, OP-090124 §§ II(A), IV-VIII (eff. Jan. 29, 2013) (S.R. Ex. 23 (Doc. No. 24-23)) ("ODOC Grievance Process"). In order to exhaust administrative remedies, an inmate must properly pursue a grievance through all steps of the ODOC Grievance Process that are available to him or her. These steps generally include: (i) submission of a "Request to Staff" to the law library supervisor or designated staff member, *id*. § IV; (ii) submission of a "Grievance" to the facility's Reviewing Authority or, if medical in nature, the Correctional Health Services Administrator ("CHSA"), *id*. § V; and (iii) submission of a "Grievance Appeal" to ODOC's Administrative Review Authority ("ARA") (defined as the ODOC Director, Chief Medical Officer ("CMO"), or their designee), *id*. §§ I(F), VII. *See* S.R. at 4-5 (sworn Special Report findings, verified by LCF Warden Hector Rios, describing ODOC's Grievance Process in general).

As discussed below, two additional aspects of the ODOC Grievance Process are relevant in this case. First, an inmate may disregard the need to submit a Request to Staff to a staff member, and in some instances the need to submit a Grievance to the Reviewing Authority or CHSA, *if* his or her "complaint is of a sensitive nature or when substantial risk of personal injury or other irreparable harm exists." OP-090124 § VIII(A). Second, the Reviewing Authority or CHSA may return a Grievance unanswered if it does not comply with certain procedural requirements, at which time the inmate generally may resubmit the Grievance or appeal that disposition. *See* OP-090124 § V(A)(7), § VI(B)(6), § VII(A)-(B).

### C. *Plaintiff's Efforts to Exhaust Administrative Remedies*

Plaintiff undisputedly submitted several documents to LCF and ODOC officials related to the alleged delay in diagnosing his ulcerative colitis, as well as Plaintiff's subsequent requests for colitis medication and a special diet. *See, e.g.*, S.R. Ex. 26, at 1-12 (Sensitive Grievance (submitted Dec. 10, 2013); Grievance No. 13-572 (dated Nov. 28, 2013)); S.R. Ex. 27, at 1-6 (Correspondence (dated Feb.-Mar. 2014)); Pl.'s Resp. Ex. 2A, at 1-4 (Grievance No. 13-572 (submitted Nov. 29, 2013)); Pl.'s Resp. Ex. 2B, at 1-3 (Grievance No. 13-572 (resubmitted Feb. 13, 2014)); Pl.'s Resp. Ex. 3, at 1-3 (Letters from ODOC Medical Services responding to Plaintiff's letter of Feb. 10, 2014); Pl.'s Resp. Ex. 4, at 1-7 (Plaintiff's Requests to Staff); Pl.'s Resp. Ex. 5, at 2-14 (Plaintiff's Requests for Health Services).

Defendant Stouffer submitted with her Motion for Summary Judgment an affidavit from ODOC Nurse Manager Cheri McCleave-Redpath in which Ms. McCleave-Redpath states that she is "familiar with the policies and procedures relating to offender grievances," she "reviewed the offender medical grievance log and the individual offender grievance files" maintained by her office, and that "[t]he medical administrative review authority has not received any properly submitted grievance appeals from" Plaintiff. *See* Def.'s Mot. Summ. J. at 5 (citing S.R. Ex. 25, McCleave-Redpath Aff. ¶¶ 2-3 (Apr. 17, 2015)). "[C]onsequently," Ms. McCleave-Redpath concludes, Plaintiff "has not exhausted his administrative remed[ies] in accordance with [ODOC's] grievance policy[] with respect to any medical issues." *Id.*; *see also* S.R. at 4-5 (sworn Special Report findings, verified by Warden Rios, that "[a]n unfavorable response to [a]

grievance may . . . be appealed to the [ARA] or [CMO]" and that Plaintiff "has not exhausted his administrative remedies" in this case because he "has not filed any properly submitted grievance appeals"). Plaintiff counters that prison officials "prevent[ed] him from exhausting his remedies" by "dismissing Plaintiff's grievances." Pl.'s Resp. (Doc. No. 35) at 1.

<u>Grievance No. 13-572</u>

On November 7, 2013, Plaintiff submitted a Request to Staff through LCF's law library stating that Plaintiff in September 2013 "reported that [he] was bleeding internally" and that several days passed before anyone from LCF's medical department saw him. *See* Pl.'s Resp. Ex. 2A, at 4. Plaintiff believed that this delay contributed to his being hospitalized "for approximately a week and a half." *Id.* Plaintiff asked LCF's medical department to "provide[] answers to [his] medical requests" that met his "particular needs" "to receive immediate medical attention since [he] had reported a medical emergency." *Id.*; *see also* Pl.'s Resp. Ex. 5, at 1 (Request for Health Services dated September 12, 2013, in which Plaintiff states that there is "a lot of blood" in his stool and that he is "Decla[]ring Medical Emergency"). Defendant Stouffer responded to the Request to Staff that Plaintiff "w[as] seen every time [he] complained of abdominal pain." Pl.'s Resp. Ex. 2A, at 4.

On November 29, 2013, Plaintiff submitted a Grievance (labeled No. 13-572) to LCF's "Current Medical Administrator." *See* S.R. Ex. 26, at 10; Pl.'s Resp. Ex. 2A, at 2-3. Plaintiff described the "nature of his complaint" this way:

> In November[] 2013 I asked Medical why when I informed LCF staff of the fact that I had blood in my stool, still was not seen. This denied me the level of medical care of an adequate prognosis and had I been seen each time I had to keep reporting this in September 2013, I may not have had to end up being hospitalized, nor experiencing the physical, mental trauma.

Pl.'s Resp. Ex. 2A, at 2-3. Plaintiff asserted that Defendant Stouffer's response to Plaintiff's November 7, 2013 Request to Staff was "false" and "fabricated" and that he "should have received immediate medical attention." *See id.* at 2. On December 9, 2013, this Grievance was returned to Plaintiff unanswered because it contained "[m]ore than 1 issue" when "only 1 issue [is] allowed" per grievance form. S.R. Ex. 26, at 9. The Reviewing Authority who returned Grievance No. 13-572 did not mark the option that would permit Plaintiff to "resubmit [his] corrected grievance within ten calendar days." *See id.* Next to the box marked "Other," the Reviewing Authority instructed Plaintiff to "put another medical request in." *Id.*

On December 10, 2013, Plaintiff—rather than resubmitting his Grievance or appealing to the ARA—submitted a new "Sensitive" Grievance to the ARA.[4] *See id.* at

---

[4] Plaintiff did not "describe the reason" why he believed "the grievance to be of a[] . . . sensitive nature that justifie[d] not submitting the grievance through normal procedures and attempting informal resolution." OP-090124 § VIII(A)(3); *see* S.R. Ex. 26, at 2-3. Instead, Plaintiff explained,

> I'm being denied adequate[] resolution and closure to an emergency I had declared, but to which the facility ignored and delayed treatment, which caused me internal bleeding and having to be hospitalized. I filed [G]rievance LCF # 13-572 and to my surprise the grievance officer[] returned such unanswered, stating: Put in another medical request in.

> Such and more than one issue [sic]. The Lt. Johns handling grievances . . . looks for two key words and/or to automatically reject answering a grievance under more than one issue. This needs to be addressed and corrected, for and/or has to be used sometimes to explain a single issue,

2-3. CMO Don Sutmiller promptly reviewed Plaintiff's submission and determined that it "did not constitute a sensitive grievance" under ODOC's policy. *See id.* at 11-12. On January 16, 2014, ODOC Medical Services Administrator Genese McCoy returned Plaintiff's Grievance unanswered because the issue was not of a sensitive or an emergency nature. *Id.* at 1. Ms. McCoy informed Plaintiff that "the standard grievance process must be followed" and that it was Plaintiff's "responsibility to properly submit [his] grievance correspondence to the appropriate staff person" at LCF. *Id.*; *see* OP-090124 § VIII(C). She also noted that Plaintiff "must submit a 'Request for Health Services' form . . . via the sick call process" if he "need[ed] further assistance with any health concerns." S.R. Ex. 26, at 1. *See generally* ODOC Access to Health Care Process, OP-140117 (eff. Oct. 30, 2015), *available at* https://www.ok.gov/doc/documents/op140117.pdf.

On January 24, 2014, Plaintiff submitted a separate Request to Staff, indicating he was trying to resolve his "original complain[t]" about the "delay in being seen by a doctor" and subsequent hospitalization. *See* Pl.'s Resp. Ex. 2B, at 3. Plaintiff explained

> that's comprised of several supporting facts. In this case, I was referring to an incident . . . where LCF staff's delay in not diagnosing my symptoms correctly . . . le[]d to my going to stay in two (2) outside hospitals. So my puttin[g] in another request . . . is not answering my complaint. And I've kept it simple enough and down to one issue/incident.
>
> . . . And please note that I had sent it to the Medical Administrator not to the regular grievance officer nor the Warden.

S.R. Ex. 26, at 2-3. In the "Sensitive" Grievance, Plaintiff asked ODOC's Medical Administrator to "instruct Lt. Johns to allow the medical administrator to answer LCF-13-572." *Id.* at 2. However, Plaintiff did not expressly indicate that he was trying to appeal or overturn Lieutenant Johns' decision to return Grievance No. 13-572 unanswered. *See id.*

that submitting a Request for Health Services would not resolve that complaint because it concerned LCF's failure to follow "the emergency protocol" in September 2013 when he "declared a medical emergency because of internal bleeding." *See id.* Defendant Stouffer responded by asking Plaintiff, "What is your medical request?" *Id.*

On February 13, 2014, Plaintiff submitted a Grievance to Defendant Stouffer, which was received in LCF's Law Library on February 19, 2014. *Id.* at 2. In this Grievance, also designated No. 13-572, Plaintiff objected to the prior refusal to address his November 29, 2013 Grievance on the merits. *See id.* Plaintiff explained that "[p]utting another sick call medical request is an inappropriate answer. The issue is that had LCF provided me adequate medical care when I declared a medical emergency, I would not have gotten worse." *Id.* On February 21, 2014, the February 13, 2014 Grievance was returned to Plaintiff unanswered because the issue "was previously grieved" on December 9, 2013, and Plaintiff was now "out of time" to pursue his administrative remedies. *Id.* at 1. Plaintiff did not appeal this result.

### Other Correspondence

Plaintiff also submitted various Requests to Staff and Requests for Health Services, as well as one letter, related to his claim that Defendants failed to provide Plaintiff with certain medications and a special diet for his ulcerative colitis after he was diagnosed with the disease. *See, e.g.*, S.R. Ex. 27, at 1-3 (Plaintiff's letter to Greg Williams and Genese McCoy); Pl.'s Resp. Ex. 3, at 2-3 (responses from Greg Williams and Genese McCoy); Pl.'s Resp. Ex. 4, at 3-7 (Requests to Staff); Pl.'s Resp. Ex. 5, at 2-5, 7-8, 10, 12-19, 23-24 (Requests for Health Services). One Request to Staff in which

Plaintiff requested that "Dr. King/medical services" "start getting me my noon meds" was returned as "non grievable."[5]  Pl.'s Resp. Ex. 4, at 3-4.

On February 14, 2014, ODOC Medical Services received a letter from Plaintiff regarding his colitis medications and request for a special diet.  *See* S.R. Ex. 27, at 1-3. Plaintiff explained, "[T]he doctor from the outside recommended that I be on a special diet, 'Blue Tray' fiber, steroids, Metamucil, Pregnazone [sic], Ensure drinks, and to drink a lot of water.  I[']m only receiving Pregnazone [sic], steroids and fiber."[6]  *Id.* at 2.  On March 17, 2014, Ms. McCoy returned Plaintiff's correspondence unanswered because he used a "letter . . . to address [his] concerns" rather than submitting his complaints "via formal grievance."  *Id.* at 1.  Ms. McCoy instructed Plaintiff that it was his "responsibility to properly submit [his] grievance correspondence in accordance with OP-090124" and that Plaintiff should "read this policy before [he] submit[s] any other correspondence." *Id.*  She also noted that Plaintiff "must submit a 'Request for Health Services' form" if he "need[ed] further assistance with any health concerns."[7]  *Id.*

---

[5] The copy of this Request to Staff that Plaintiff provided to the Court is neither date-stamped as being received by the LCF law library nor signed by the unidentified individual who returned the Request to Staff as "non grievable."  Pl.'s Resp. Ex. 4, at 3.

[6] Plaintiff also submitted Requests for Health Services on January 21, January 28, February 6, and February 10, 2014, asking "about a special diet for [his] colitis," as well as an unidentified colitis medication that needed to be ordered.  *See* Pl.'s Resp. Ex. 5, at 2-5.  The "comments" section at the bottom of each form indicates that a LCF healthcare provider addressed Plaintiff's request or saw Plaintiff within a few days of receiving each request.  *See id.*

[7] In July and August 2014, Plaintiff submitted multiple Requests for Health Services seeking to refill his colitis medications and to schedule an appointment with a healthcare provider about an abnormal amount of blood in his stool.  Pl.'s Resp. Ex. 5, at 7-8, 10, 12-14.  The "comments" section at the bottom of each form indicates that Plaintiff's

### D. Discussion

Defendant Stouffer has produced admissible evidence that (i) ODOC had an administrative grievance process for reviewing "medical[ly]"-related issues in place when Plaintiff's claims arose, and (ii) in order to properly complete this process an inmate had to properly pursue his or her complaint through the final level of the Grievance Process—an appeal to the ARA. *See* OP-090124 §§ I-II, IV-VII; McCleave-Redpath Aff. ¶¶ 2-3; S.R. at 4-5. An ODOC Nurse Manager "familiar with the policies and procedures relating to offender grievances" has attested that she reviewed the relevant files and that the "medical administrative review authority has not received any properly submitted grievance appeals from" Plaintiff, and, as a result, Plaintiff "has not exhausted his administrative remed[ies] in accordance with [ODOC's] grievance policy[] with respect to any medical issues." McCleave-Redpath Aff. ¶¶ 2-3. This evidentiary material, considered together with the record evidence summarized above, is sufficient to shift the burden to Plaintiff to demonstrate with specificity the existence of a genuine dispute as to whether he either did exhaust his administrative remedies or was prevented by prison officials from doing so. *Cf. Hesterlee v. Cornell Cos.*, 351 F. App'x 279, 281 (10th Cir. 2009) (holding that evidence including "an affidavit from a prison official who stated that he reviewed Plaintiff's records and determined that Plaintiff did not file any grievances" related to the legal claim and "records of Plaintiff's three attempts to file an appeal . . . [that] showed that each attempted appeal was rejected for procedural failings"

---

medications had been ordered and would be provided when available, and that Plaintiff was informed that he would be referred to a provider for reevaluation of his ulcerative colitis. *See id.*

adequately supported defendants' initial burden for summary judgment on nonexhaustion grounds).

Allegations of Delayed Diagnosis, Leading to Hospitalization

As detailed, Plaintiff in Grievance No. 13-572 presented to the Reviewing Authority his allegations that LCF personnel did not timely examine him and diagnose his digestive ailment. Plaintiff concedes that when this Grievance was returned unanswered, he did not resubmit a revised grievance or "appeal" the Reviewing Authority's decision, but instead "filed a 'Sensitive' Grievance" to ODOC's CMO (which itself was returned unanswered). *See* Pl.'s Resp. at 1; Compl. at 7. Plaintiff does not allege, and the record does not reflect, that he otherwise attempted to submit a proper appeal related to Grievance No. 13-572, whether before or after the "'Sensitive' Grievance" was returned unanswered. *See* Compl. at 7.

Merely submitting a "Sensitive Grievance" to the ARA is not an acceptable substitute for a properly filed grievance appeal. Rather, ODOC's Grievance Process requires that an administrative appeal or a *valid* sensitive topic grievance be submitted to the ARA.[8] *See* OP-090124, §§ VII, VIII; *Barber v. Jones*, No. CIV-12-1051-C, 2013 WL 3884153, at *1, *5 (W.D. Okla. July 26, 2013) (holding that a separate grievance submitted to the ARA that was "returned 'unanswered' because the grievance was not of a 'sensitive or emergency nature'" was not the equivalent of a properly submitted

---

[8] Plaintiff does not allege that Ms. McCoy lacked the authority to return Plaintiff's purportedly "sensitive" grievance—which essentially challenged Lieutenant Johns' stated reason for returning Grievance No. 13-572 unanswered—because it was not a "complaint of a sensitive nature." *See* Compl. 7; Pl.'s Resp. at 1; OP-090124 § VIII(A)(2), (C).

grievance appeal); *Uzochukwu v. Roody*, No. CIV-11-243-HE, 2011 WL 5878391, at *3 (W.D. Okla. Aug. 17, 2011) (R. & R.) ("An *alternative* administrative remedy is provided by [O]DOC for 'emergency' or 'sensitive' grievances." (emphasis added)), *adopted*, 2011 WL 5877457 (W.D. Okla. Nov. 23, 2011), *and aff'd*, 472 F. App'x 865 (10th Cir. 2012).   Thus, by failing to pursue the standard grievance procedure to its completion, and choosing to submit a new and invalid "Sensitive Grievance" to the CMO instead of filing a proper appeal, Plaintiff did not exhaust his available administrative remedies as to the delayed-diagnosis claim.  *See Barber*, 2013 WL 3884153, at *5; *cf. Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (holding that "[t]he district court did not err in concluding that Mr. Thomas failed to exhaust his administrative remedies when he did not properly complete all three written steps" set out in ODOC's Grievance Process).

Allegations of Failure to Provide Medicine and Special Diet

Plaintiff asserts as part of his claim against Defendant Stouffer that she failed to provide him the medication and special diet required as a result of his digestive ailment. Plaintiff does not allege that he filed any grievances or grievance appeals related to this claim.  *See* Pl.'s Resp. at 1; Compl. at 7.   Although Plaintiff discussed his diet in correspondence sent to ODOC, including the February 2014 letter to Greg Williams and Genese McCoy, that correspondence was not sufficient to exhaust administrative remedies.   The ODOC Grievance Process required (absent exceptions not suggested by Plaintiff) that Plaintiff grieve any medical issues or incidents by submitting in turn a Request to Staff, a Grievance, and finally a Grievance Appeal.   An inmate cannot bypass

that procedure by sending letters directly to the ARA. *Cf. Brewer*, 130 F. App'x at 265 ("[T]he record indicates that Mr. Brewer attempted to bypass the normal grievance procedures by filing 'emergency' grievances or by skipping steps in the procedure."); *Fisher v. Figueroa*, No. CIV-12-231-F, 2013 WL 676170, at *2 (W.D. Okla. Jan. 7, 2013) (R. & R.), *adopted*, 2013 WL 675386, at *1 (W.D. Okla. Feb. 22, 2013). "Thus, [Plaintiff's] correspondence would not constitute 'proper' exhaustion" of his claim that Defendant Stouffer failed to provide medications and a special diet for Plaintiff's ulcerative colitis. *Fisher*, 2013 WL 676170, at *2; *see* S.R. Ex. 27, at 1-3.

Plaintiff's Assertion That He Was Prevented
from Exhausting Administrative Remedies

Plaintiff counters that ODOC officials "prevent[ed] him from exhausting his remedies" because they improperly "dismissed Plaintiff's grievances."[9] Pl.'s Resp. at 1. Specifically, Plaintiff asserts in his Complaint that "dismissal for failure to exhaust administrative remedies is improper because prison officials refused to properly investigate Plaintiff's claim and attempted to frustrate the grievance process. The

---

[9] Plaintiff also objects that the Court should not accept Defendant Stouffer's assertions that Plaintiff "filed no grievances or Request[s] to Staff[] at the facility level" and "filed only one sensitive grievance." Pl.'s Resp. at 1. Regardless of what efforts Plaintiff made to *initiate* a grievance with respect to his claims, he was required to "pursue the grievance procedure to its *conclusion* by appealing" any unfavorable decision to ODOC's medical administrative review authority. *Brewer*, 130 F. App'x at 265 (emphasis added); *cf. Anderson*, 477 U.S. at 247-48 ("By its very terms, [Fed. R. Civ. P. 56(c)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). The summary judgment record establishes that Plaintiff did not submit any such appeal.

Plaintiff Luis Sanchez did all he could do to exhaust his remedies." Compl. at 7 (citation omitted)).

"Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little*, 607 F.3d at 1250. Here, however, there is no evidence that ODOC officials rendered the administrative review process "unavailable" to Plaintiff. For example, Plaintiff does not attempt to show that he was prevented from using the regular form or standard procedure to appeal Grievance No. 13-572. *See, e.g.*, *Hoover v. West*, 93 F. App'x 177, 181 (10th Cir. 2004) ("[A] prisoner lacks 'available' remedies where prison officials deny him or her the necessary grievance forms."). "'[C]onclusory and self-serving affidavits are not sufficient' to demonstrate the existence of a disputed material fact and thus defeat a motion for summary judgment" showing that Plaintiff failed to exhaust his "available" administrative remedies. *See Hesterlee*, 351 F. App'x at 281 (quoting *Hall*, 935 F.2d at 1111)).

Further, while Plaintiff asserts that his grievances were dismissed—i.e., he "could not get [past] the LCF Grievance Coordinator," Compl. at 7—he does not suggest that this official lacked authority to reject Grievance No. 13-572 for a procedural deficiency or that Plaintiff had no available recourse if he believed that result was incorrect. The first recourse potentially available to an inmate upon return of a grievance for procedural defect is to "[i]f allowed . . . properly re-submit the grievance within ten calendar days of receipt." OP-090124 § V(A)(7). Here, because the box allowing resubmission was not checked on the written form upon which the Reviewing Authority returned Grievance

No. 13-572 unanswered, *see* S.R. Ex. 26, at 9, the undersigned does not assume that resubmission was a form of recourse reasonably available to Plaintiff.[10]

It remains the case, however, that Plaintiff could have and did not appeal the rejection of Grievance No. 13-572. *See* S.R. at 4-5; OP-090124 § VII(A). The fact that Grievance No. 13-572 was returned "unanswered neither excused [Plaintiff] from the requirement that he exhaust [O]DOC's administrative remedies nor 'ma[d]e the exhaustion process unavailable to [him].'" *McMiller v. Corr. Corp. of Am.*, No. CIV-14-161-W, 2015 WL 1010508, at *4 n.6 (W.D. Okla. Mar. 6, 2015) (quoting *Thomas*, 609 F.3d at 1118 n.2)). The ODOC Grievance Process authorizes prison officials to return grievances unanswered if the inmate "does not follow instructions as explained in this procedure and on the grievance forms." OP-090124 § V(A)(7); *see also id.* §§ II(C), VI(B)(6). Upon receiving this rejection of Grievance No. 13-572, Plaintiff had the

_____

[10] In other words, the undersigned assumes, in favor of Plaintiff, that any failure by him to resubmit Grievance No. 13-572 to the Reviewing Authority does not by itself establish that he failed to properly exhaust his available remedies. In this regard, one provision of the ODOC Grievance Process and the grievance form itself indicate, inconsistently with OP-090124 § V(A)(7) and the form used by the Reviewing Authority to return Grievance No. 13-572 unanswered, that an inmate *always* has the right to resubmit a grievance that has been returned by the relevant reviewing authority based on a procedural defect. *Compare* OP-090124 § VI(B)(6) ("The reviewing authority will return unanswered any grievance that contain[s] any errors in the filing process and notify the offender to correct the errors within 10 calendar days . . . ."), *and* S.R. Ex. 26, at 10 (form used by Plaintiff to submit Grievance No. 13-572 stating, "You will be permitted only one opportunity to correct any error/s made in submitting your grievance."), *with* OP-090124 § V(A)(7) ("If allowed, the offender must properly re-submit the grievance within ten calendar days of receipt"), *and* S.R. Ex. 26, at 9 (grievance rejection form leaving resubmission box unchecked and stating that Plaintiff has ten days to properly resubmit the grievance "if allowed"). Because the undersigned has not relied on resubmission as an option that was available to Plaintiff, it is not necessary to resolve the effect of this inconsistency on the adequacy of Plaintiff's efforts to exhaust.

opportunity to "appeal the reviewing authority's response to the grievance" and argue that "newly discovered/available evidence" existed or that "[p]robable error [was] committed by the reviewing authority in the decision such as would be grounds for reversal." *Id.* § VII(A)(1), (2); *see, e.g.*, *McMiller v. Jones*, 590 F. App'x 749, 751-52 (10th Cir. 2014) (noting that an ODOC inmate appealed Reviewing Authority's decision to return his grievance unanswered); *Burnett v. Jones*, 437 F. App'x 736, 742 (10th Cir. 2011) (same); *McMiller v. Corr. Corp. of Am.*, 2015 WL 1010508, at *4 n.6 ("Upon the return of [the grievance], [the inmate] was obligated to either resubmit a procedurally compliant grievance or appeal."). Plaintiff did not do so.[11]

Plaintiff's proffered allegations and evidence do not provide an acceptable ground on which a jury could reasonably find that Plaintiff was prevented from exhausting his administrative remedies.

---

[11] In *Jones v. Miller*, No. CIV-13-285-D, 2014 U.S. Dist. Lexis 119432 (W.D. Okla. Aug. 27, 2014), this Court considered exhaustion in the similar context of an ODOC inmate whose grievance was returned to him by the relevant reviewing authority without allowing the inmate to correct and resubmit the grievance. The Court found that because the "grievance was not answered," the inmate "had no 'response' to appeal" and, therefore, the inmate had "come forward with sufficient evidence to support a reasonable inference that [administrative] remedies were not available to him due to actions taken by prison officials." *Id.* at *12. In that case, however, the inmate after his initial grievance was rejected: (i) resubmitted a revised grievance to the reviewing authority, who returned it for the unfounded reason that the inmate had an "active grievance on this issue"; and then (ii) submitted an appeal to the ARA, which returned the appeal for being untimely. *See id.* at *7-12. The undersigned does not read *Jones* as holding that *all* inmates who have grievances returned without expressly being allowed to resubmit them are excused from taking any further action (including appeal to the ARA) in order to exhaust their administrative remedies. *See id.* at *13 ("*On the record presented*, this is not a case where Plaintiff chose not to avail himself of the opportunity to correct deficiencies—he was not given that opportunity." (emphasis added)).

*E. Conclusion*

Considering the facts alleged by both parties in the light most favorable to Plaintiff as the nonmoving party, such facts are insufficient to "demonstrate with specificity the existence of a disputed material fact" on the issue of whether Plaintiff exhausted his administrative remedies. *See Hutchinson*, 105 F.3d at 564. The undisputed material facts show that Plaintiff did not submit a proper, timely grievance appeal to the ARA relating to his allegations against Defendant Stouffer, as was required to complete the ODOC Grievance Process. *See Ngo*, 548 U.S. at 90. Substantial compliance with ODOC's "'deadlines and other critical procedural rules'" does not suffice under the PLRA. *Craft v. Null*, 543 F. App'x 778, 779 (10th Cir. 2013) (quoting *Ngo*, 548 U.S. at 90); *Jernigan*, 304 F.3d at 1032.

None of the evidence in the record, even when construed in favor of Plaintiff, creates a genuine question of fact that would prevent the conclusion that Plaintiff failed to exhaust his administrative remedies prior to commencing his federal claims against Defendant Stouffer. "[E]xhaustion is mandatory under the PLRA[,] and . . . unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. Accordingly, the undersigned finds that Defendant Stouffer's affirmative defense of nonexhaustion of administrative remedies is established as a matter of law, and, therefore, summary judgment should be entered in Defendant Stouffer's favor.[12]

---

[12] In light of this recommendation, the undersigned need not address Defendant Stouffer's arguments in support of summary judgment on the merits of Plaintiff's claims.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Plaintiff's request to dismiss Kent King as a Defendant to this action, construed as a Motion to Amend the Complaint (Doc. No. 33), and Defendant Shirley Stouffer's Motion for Summary Judgment (Doc. No. 34), be GRANTED. Because acceptance of this recommendation will result in summary judgment being entered in the sole remaining Defendant's favor, the undersigned further recommends that Plaintiff's Motion for Appointment of Counsel (Doc. No. 31) be DENIED AS MOOT if the Court grants these Motions (Doc. Nos. 33, 34).

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by March 23, 2016, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties further are advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 2nd day of March, 2016.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE